NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------
                                         :
Brendan McElduff, et al.,                :
                                         :
    Plaintiffs,                          :         Civ. No. 05-0657 (DRD)
                                         :
    v.                                   :
                                         :
U.S. Bancorp, et al.,                    :         **O P I N I O N**
                                         :
    Defendants                           :
                                         :
---------------------------------------------------------

Andrew W. Wubbenhorst, Esq.
JOHNSON, MURPHY, HUBNER, McKEON, WUBBENHORST, BUCCO & APPLET, P.C.
51 Route 23 South
P.O. Box 70
Riverdale, New Jersey 07457

*Attorney for Plaintiffs*


Sanjay P. Ibrahim, Esq.
DUANE MORRIS, L.L.P.
744 Broad Street
Suite 1200
Newark, New Jersey 07102

*Attorney for Defendant U.S. Bank National Association, N.D.*


Debra L. Wabnik, Esq.
SIMMONS, JANNACE & STAGG, L.L.P.
75 Jackson Avenue
Syosset, New York 11791

*Attorney for Defendant Chase Manhattan Bank USA*

1

**DEBEVOISE, Senior District Judge**

Plaintiffs, Brendan McElduff, Ulster Construction, Inc., P.J. McCorp., and 170 Realty Corp., filed a complaint in the Superior Court of New Jersey, Bergen County, against Defendants, U.S. Bancorp (hereinafter "US Bank") and Bank One (hereinafter "Chase Manhattan"),[1] claiming violations of the Federal Truth in Lending Act, 15 U.S.C. § 1643, et seq. Plaintiffs allege that Defendants issued unauthorized credit cards for accounts belonging to Brendan McElduff and Ulster Construction to an Ulster Construction employee, Theresa Schuhmann, who forged Mr. McElduff's signature on the card applications. After Ms. Schuhmann was convicted of fraud and unlawful conversion she was ordered to pay approximately $223,000 in restitution for charges she made on the aforementioned cards. As only $62,500 of that money has been repaid, Plaintiffs now seek relief from Defendants for the remaining amount. Presently before the court are Defendants' motions for summary judgment.

## I. BACKGROUND

Plaintiffs hired Ms. Schuhmann as a secretary and bookkeeper in March of 1997. Ms. Schuhmann was authorized to open mail, write (but not sign) checks for corporate bills, and correspond with the corporate accountant. She also handled Mr. McElduff's personal finances. Mr. McElduff was typically responsible for signing company checks. However, he was out of the country between June and October of 1998. During that time, Mr. McElduff provided a stamp of his signature to another employee, Philip McIntyre. When Mr. McIntyre left the company in March of 1999, use of the stamp was to be discontinued but instead, the stamp was

---

[1] Plaintiffs' complaint alleges claims against several other defendants who are not parties to these motions. For purposes of this opinion, the term "Defendants" refers only to US Bank and Chase Manhattan.

acquired by Ms. Schuhmann.

Between September of 1998 and June of 2002 Ms. Schumann defrauded Plaintiffs by applying for additional credit cards to be issued on accounts that already existed for Mr. McElduff and Ulster Construction. Three such cards were issued. Chase Manhattan issued one in or around September of 1998 and another in or around January of 2000. US Bank issued one in or around August of 2000.

After receiving those cards and making unauthorized purchases, Ms. Schuhmann typically paid the credit card bills by drawing company checks and either forging Mr. McElduff's signature or using the signature stamp. However, several bills were paid from Mr. McElduff's personal checking account and some of the bills were paid using checks that Mr. McElduff actually signed himself. Schuhmann also intercepted mail and failed to show bank statements to Mr. McElduff. She also created fake invoices and misstated facts in the check register, such as indicating that a check had been voided or that it had been written to a different payee than the actual payee. Lastly, Ms. Schuhmann misused blank checks that Mr. McElduff signed and left with her for use in cases where he was unavailable.

Mr. McElduff's wife uncovered the scheme in June of 2002. Schuhmann was indicted and pled guilty on October 27, 2003. Plaintiffs filed the complaint in this matter on December 18, 2004. The complaint clearly alleges that Defendants violated the Federal Truth in Lending Act. In opposition to the present motions, Plaintiffs argue that the complaint also alleges claims of common law trespass to real property. Defendants dispute that argument.

## II.  DISCUSSION

**Standard for Summary Judgment**

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law,  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment, Id.  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor,'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999), quoting, Anderson, 477 U.S. at 255.  But where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (U.S. 1986).

**The Federal Truth in Lending Act**

Under 15 U.S.C. § 1640(e) Truth in Lending Act claims have a one year statute of limitations.  Thus, a borrower may bring an action for damages within one year of an alleged violation.  See Nix v. Option One Mortg. Corp., No. 05-3685, 2006 U.S. Dist. LEXIS 2289 (D.N.J. Jan.19, 2006).

In the present case, the violations alleged against Chase Manhattan occurred in September of 1998 and January of 2000, when it issued the two unauthorized cards. The violation alleged against US Bank occurred in August of 2000, when it issued an unauthorized card. Thus, to satisfy the statute of limitations, Plaintiffs would have to have filed their claims against Chase Manhattan and US Bank no later than January and August of 2001, respectively.

Plaintiffs argue that the statute of limitations should be liberally construed in favor of the consumer. In fact, courts have recognized circumstances in which the limitations period should be tolled.

> Equitable tolling serves to "stop the statute of limitations from running where the claim's accrual date has passed." In general, the principle applies where (1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff has been prevented in some extraordinary way from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. A plaintiff seeking relief under the equitable tolling doctrine must ultimately show that he exercised due diligence in defending his legal rights and that despite his due diligence, one of the three circumstances described above prevented him from pursuing his claims in a timely manner.

Nix, 2006 U.S. Dist. LEXIS 2289, at 25. None of those circumstances are present in this case.

One might argue that Plaintiffs were prevented from bringing this case within the statute of limitations because they did not discover the alleged violation until June of 2002, after the limitations period had run. But even if the limitations period was tolled until that time, Plaintiffs' claims would still be barred as they did not file suit until December of 2004. Moreover, the fact that Plaintiffs did not discover the alleged violation does not mean that they were "prevented in some extraordinary way from asserting [their] rights." Based on the facts before the court, it appears that Plaintiffs' failure to discover the alleged violations was due to their own negligence. Thus, there is no reason to toll the limitations period. Plaintiffs' claims

5

are time-barred.

**Common Law Trespass to Real Property**

Plaintiffs argue that the following language contained in their complaint asserts a claim of common law trespass to real property: "Defendant[s] . . . wrongfully, negligently and carelessly accepted fraudulent credit card applications, issued credits [sic] cards without properly authenticating the identity of the applicant, accepted forged checks and instruments in payment of the unauthorized charges and failed to notify the Plaintiffs of the unauthorized use of Plaintiffs' credit cards." Oddly, that sentence is included within the counts of the complaint in which Plaintiffs assert their Truth in Lending Act claims against the respective Defendants. But even if it was stated as a distinct count in the complaint it would be insufficient to state a claim for common law trespass. Furthermore, such a claim, even if properly pled, would be unlikely to survive summary judgment as Ms. Schuhmann's ability to defraud Plaintiffs seems to be due to Plaintiffs' own negligence rather than Defendants' conduct.

### IV.  CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment will be granted. The Court will enter an order implementing this opinion.


/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:          April 11, 2006